1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ANGEL ROMULO DEL VALLE CASTILLO, et al., <br><br> Petitioners, <br><br> v. <br><br> CAMMILLA WAMSLEY, et al., <br><br> Respondents. | Case No. 2:25-cv-02054-TMC <br><br> ORDER GRANTING IN PART AND DENYING IN PART PETITIONERS' MOTION FOR TEMPORARY RESTRAINING ORDER |

## I.   ORDER

On October 21, 2025, Petitioners filed a petition for writ of habeas corpus, alleging that Respondents violated the Immigration and Nationality Act ("INA") by subjecting them to mandatory detention at the Northwest Immigration and Customs Enforcement Processing Center ("NWIPC") under 8 U.S.C. § 1225(b)(2). Dkt. 1 ¶¶ 96–103. On October 30, Petitioners filed an *ex parte* motion for a temporary restraining order ("TRO") enjoining Respondents from transferring them out of the Western District of Washington during the habeas proceedings. Dkt. 10 at 1. At the same time, they sought an order requiring Respondents to return Petitioner Hector Ramirez Garcia, who had been transferred from NWIPC to a facility in New Mexico, back to this district. *Id.* The Court issued an order temporarily prohibiting Respondents from

transferring any Petitioner out of this district and directing the parties to communicate their availability for a hearing on the motion. Dkt. 14. Through email communications with the courtroom deputy, the parties then consented to the Court deciding the motion on the papers. On October 31, Federal Respondents filed a response to the motion. Dkt. 15. The motion is now ripe for the Court's review. For the reasons that follow, the Court GRANTS IN PART and DENIES IN PART the motion for a TRO.

Petitioners argue that a TRO is warranted because (1) they are likely to succeed on the merits of their habeas petition; (2) they face irreparable harm absent the requested relief; and (3) the balance of equities and the public interest weigh in their favor. Dkt. 10 at 4–9. Federal Respondents assert that transfer is permissible consistent with the government's authority "to determine the placement and transfer of detainees to appropriate detention facilities." Dkt. 15 at 2; *see* 8 U.S.C. § 1231(g)(1) ("The Attorney General shall arrange for appropriate places of detention for aliens detained pending removal or a decision on removal.").

A federal district court "may issue all writs necessary or appropriate in aid of [its] . . . jurisdiction[] and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). A court "has the inherent authority and responsibility to protect the integrity of its proceedings which [are] undoubtedly impacted" when a habeas petitioner is transferred to a detention facility outside of the district. *Ozturk v. Trump*, 779 F. Supp. 3d 462, 496 (D. Vt. 2025), *amended sub nom. Ozturk v. Hyde*, 136 F.4th 382 (2d Cir. 2025). Under this authority, a court may order injunctive relief prohibiting the government from transferring a petitioner out of the district while habeas corpus proceedings are ongoing. *See Oliveros v. Kaiser*, No. 25-CV-07117-BLF, 2025 WL 2677125, at *8–9 (N.D. Cal. Sept. 18, 2025). Section 1231(g) does not preclude courts' inherent authority to issue such orders. *See Ozturk*, 136 F.4th at 395–96 (determining that the government was unlikely to succeed on its argument that judicial review was precluded under

ORDER GRANTING IN PART AND DENYING IN PART PETITIONERS' MOTION FOR TEMPORARY RESTRAINING ORDER - 2

§ 1231(g)); *see also Reyna ex rel J.F.G. v. Hott*, 921 F.3d 204, 209 (4th Cir. 2019) ("[T]he language of § 1231(g) does not address transfers at all, nor does it explicitly grant the Attorney General or the Secretary of Homeland Security discretion with respect to transfers.").

Moreover, a party seeking a TRO "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *United States v. City of Seattle*, 474 F. Supp. 3d 1181, 1185 (W.D. Wash. 2020) ("The standard for issuing a TRO is the same as the standard for issuing a preliminary injunction."). When a party seeks a TRO against the government, the third and fourth factors merge. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). In the Ninth Circuit, a party may also obtain a TRO by demonstrating "'serious questions going to the merits' and a balance of hardships that tips sharply" in the party's favor, so long as the party also shows "that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021) (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)); *City of Seattle*, 474 F. Supp. 3d at 1185–87 (applying the "serious questions" standard to a request for a TRO).

The Court finds that Petitioners have raised serious questions about the legality of their detention under the INA. Petitioners allege that they are entitled to relief under *Rodriguez Vazquez v. Bostock*, --- F. Supp. 3d ---, No. 3:25-cv-05240-TMC, 2025 WL 2782499 (W.D. Wash. Sept. 30, 2025); Dkt. 1 ¶¶ 96–100. In *Rodriguez Vazquez,* this Court granted summary judgment to members of a certified Bond Denial Class, entering final judgment and issuing the following declaratory relief:

>The Court declares that Bond Denial Class members are detained under 8 U.S.C. § 1226(a) and are not subject to mandatory detention under 8 U.S.C. § 1225(b)(2). The Court further declares that the Tacoma Immigration Court's practice of denying bond to Bond Denial Class members on the basis of § 1225(b)(2) violates the Immigration and Nationality Act.

--- F. Supp. 3d ---, No. 3:25-CV-05240-TMC, 2025 WL 2782499, at *27.

In their response to the habeas petition, Respondents raise strong arguments that Petitioners are not members of the Bond Denial Class because they were initially apprehended upon arrival to the United States. Dkt. 16 at 12–15. But Petitioners contend that because they were released and resided in the United States for months to years prior to their most recent apprehensions, they are subject to detention under 8 U.S.C. § 1226(a) and are therefore entitled to bond hearings. Dkt. 1 ¶¶ 27–54; Dkt. 10 at 4–7. Even if Petitioners are not included in the *Rodriguez Vazquez* class, this argument, at a minimum, raises serious questions regarding whether their mandatory detention under § 1225(b)(2) violates the INA.

Second, Petitioners have demonstrated a likelihood of irreparable harm and that the balance of hardships tips sharply in their favor, as transfer to detention facilities outside of the Western District of Washington would impede their ability to communicate with counsel and participate in bond hearings. Dkt. 10 at 7–8; *see L.A.E. v. Wamsley*, No. 3:25-CV-01975-AN, 2025 WL 3037856, at *5 (D. Or. Oct. 30, 2025) ("Given the labyrinthine nature of immigration law and the harms of an erroneous deportation, abridging access to legal representation in the context of removal proceedings is a particularly concrete and irreparable harm."); *Arroyo v. U.S. Dep't of Homeland Sec.*, No. SACV19815JGBSHKX, 2019 WL 2912848, at *22 (C.D. Cal. June 20, 2019) (concluding that transferring detainees to new immigration facilities would cause irreparable harm by burdening detainees' ability to interact with retained counsel). An attorney representing Ramirez Garcia in separate immigration matters attests that the Northwest Immigrant Rights Project, which represents Petitioners here, lacks resources to visit clients at

facilities outside of the state of Washington or to facilitate out-of-state pro bono representation. Dkt. 12 ¶¶ 3, 5, 11.

Moreover, Federal Respondents have not shown that maintaining Petitioners' detention at NWIPC would impose an undue hardship on the government. Ensuring that Petitioners retain access to counsel will facilitate the speedy resolution of the habeas proceedings. *See Oliveros*, No. 25-CV-07117-BLF, 2025 WL 2677125, at *8–9 ("Here, the Court finds that equities strongly favor Petitioner remaining in this District pending the resolution of this matter because this will expedite resolution of this matter, provide Petitioner ready access to medical and legal services, and address concerns about the conditions of her detention."). Keeping Petitioners at NWIPC is also consistent with the Immigration and Customs Enforcement ("ICE") Detainee Transfers Directive No. 11022.1, which states that "[u]nless a transfer is deemed necessary by a [Field Office Director] or his or her designee," ICE "will not transfer a detainee when there is documentation to support," among other things, "[i]mmediate family within the [Area of Responsibility]" or "[a]n attorney of record . . . within the [Area of Responsibility.]" *Arroyo*, No. SACV-19815-JGBSHKX, 2019 WL 2912848, at *3; *see also* Dkt. 15 at 2 (citing U.S. Immigration and Customs Enforcement, Performance-Based National Detention Standards 2011 (rev. 2016), *available at* https://www.ice.gov/doclib/detentionstandards/2011/pbnds2011r2016.pdf, which in turn states that "[d]ecisions to transfer detainees are made . . . on the basis of complete and accurate case information and principles set forth in the ICE/ERO Detainee Transfers Directive and other applicable ICE/ERO policies"); ICE/ERO Detainee Transfers Directive at 2, *available at* https://www.ice.gov/doclib/foia/policy/11022.1_DetaineeTransfers.pdf.

If circumstances change, Respondents can seek a modification of this Order. Therefore, the Court concludes that a TRO prohibiting the transfer of the Petitioners still located at NWIPC

ORDER GRANTING IN PART AND DENYING IN PART PETITIONERS' MOTION FOR TEMPORARY RESTRAINING ORDER - 5

is warranted to protect the integrity of these habeas proceedings and GRANTS the motion for TRO to the extent that it seeks such relief.

However, the Court DENIES Petitioners' request for the return of Ramirez Garcia to NWIPC. The relief Petitioners seek regarding Ramirez Garcia would be a "mandatory injunction," which "'order[s] a responsible party to take action' going 'well beyond simply maintaining the status quo.'" *Betschart v. Oregon*, 103 F.4th 607, 619 (9th Cir. 2024) (quoting *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009)). A party seeking a mandatory injunction must demonstrate "that the law and facts clearly favor [their] position, not simply that [they are] likely to succeed." *Id.* (alterations in original) (quoting *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc)). Although Petitioners have raised serious questions about the legality of their detention, they have not met this higher bar for relief.

Accordingly, the Court orders as follows:

1. Petitioners' motion for a temporary restraining order (Dkt. 10) is GRANTED IN PART and DENIED IN PART.

2. Respondents, including their officers, agents, servants, employees, attorneys, or others acting on their behalf, are PROHIBITED from transferring any Petitioner from the Northwest Immigration and Customs Enforcement Processing Center to any other facility during the pendency of these proceedings unless they seek modification of this Order or there is a final, executable removal order for any Petitioner.

3. This Order expires November 19, 2025 unless extended by this Court. The Court anticipates that it can rule on the underlying habeas petition within that time. Should an extension be necessary, the Court will set a hearing and briefing schedule for whether to convert the TRO into a preliminary injunction.

ORDER GRANTING IN PART AND DENYING IN PART PETITIONERS' MOTION FOR TEMPORARY RESTRAINING ORDER - 6

4. Respondents have not requested a bond and the Court waives the bond requirement under Federal Rule of Civil Procedure 65(c).

Dated this 5th day of November, 2025.

Tiffany M. Cartwright
United States District Judge

ORDER GRANTING IN PART AND DENYING IN PART PETITIONERS' MOTION FOR TEMPORARY RESTRAINING ORDER - 7