1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8

9

10

11

12

13

| | |
|---|---|
| ANGEL ROMULO DEL VALLE CASTILLO, et al., <br><br> Petitioners, <br><br> v. <br><br> CAMMILLA WAMSLEY, et al., <br><br> Respondents. | Case No. 2:25-cv-02054-TMC <br><br> ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS |

14

15

## I.    INTRODUCTION

16

17

18

19

20

21

22

23

24

Petitioners are individuals who entered the United States years ago, were apprehended by immigration officers upon arrival, and were subsequently released. Dkt. 1 ¶ 4. Each Petitioner was apprehended again in 2025 and placed in mandatory detention at the Northwest Immigration and Customs Enforcement Processing Center ("NWIPC") under 8 U.S.C. § 1225(b). *See id.* ¶¶ 2–4; Dkt. 3-1 at 4–6; Dkt. 3-4 at 2; Dkt. 3-5 at 4–6; Dkt. 3-7 at 2; Dkt. 3-9 at 4–7; Dkt. 3-11 at 2; Dkt. 3-12 at 4–6; Dkt. 3-14 at 2; Dkt. 3-15 at 4–6; Dkt. 3-19 at 2; Dkt. 18-22 at 4–5; Dkt. 25 ¶¶ 4–5. On October 21, 2025, Petitioners sought a writ of habeas corpus, arguing that their mandatory detention is unlawful because they are entitled to consideration for release on bond

1    under 8 U.S.C. § 1226(a). Dkt. 1. For the reasons set forth below, the Court GRANTS the

2    petition for writ of habeas corpus.

3                                        **II.    BACKGROUND**

4    **A.    Facts**

5         *1.    Angel Romulo Del Valle Castillo*

6    Petitioner Angel Romulo Del Valle Castillo entered the United States on April 5, 2022, at

7    the age of 15 and was apprehended by border patrol agents shortly afterward. Dkt. 3-1 at 7–9. He

8    was identified as an unaccompanied juvenile and charged under 8 U.S.C. § 1182(a)(6)(A)(i) as

9    an "alien present without admission or parole." *Id.* at 8–9; Dkt. 3-2 at 2. The Department of

10   Homeland Security ("DHS") transferred custody of Del Valle Castillo to the Department of

11   Health and Human Services, Office of Refugee Resettlement ("ORR"). Dkt. 17 ¶ 4. On May 13,

12   2022, he was released from federal custody to live with his father in California. Dkt. 3-2 at 5.

13        On August 8, 2025, Del Valle Castillo was detained a second time. Dkt. 3-1 at 4–6. This

14   time, he was charged as both an "alien present without admission or parole" under

15   § 1182(a)(6)(A)(i) and an "immigrant without an immigrant visa" under § 1182(a)(7)(A)(i)(I).

16   *Id.*; Dkt. 3-3 at 2, 5. On October 8, an Immigration Judge ("IJ") determined that Del Valle

17   Castillo was subject to mandatory detention under § 1225(b)(2).[1] Dkt. 3-4 at 2–3. The IJ did not

18   set an alternative bond amount. *Id.* at 2–3.

19        On October 18, Del Valle Castillo applied for asylum and withholding of removal.

20   Dkt. 17 ¶ 10. That claim is still pending. *Id.* ¶ 11.

---

[1] Some of the Petitioners' custody orders cite both § 1225(b)(1) and § 1225(b)(2)(A) as bases for mandatory detention. Section 1225(b)(2)(A) does not apply to any noncitizen to whom § 1225(b)(1) applies. 8 U.S.C. § 1225(b)(2)(B)(ii). At the hearing on November 21, 2025, Respondents represented that the government considers all Petitioners except for Jose Antonio De La Cruz Gonzalez to be subject to mandatory detention under § 1225(b)(2).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

    2.      *Jose Antonio De La Cruz Gonzalez*

On August 6, 2017, Petitioner Jose Antonio De La Cruz Gonzalez, who was 13 years old, entered the United States with his family at the San Ysidro Port of Entry and was apprehended upon arrival. Dkt. 3-5 at 5; Dkt. 17 ¶ 12. He and his family were entered into expedited removal proceedings. Dkt. 3-5 at 5. On August 17, Citizenship and Immigration Services ("USCIS") found that the family had credible fear of persecution and issued them a Notice to Appear. *Id.* Later that week, De La Cruz Gonzalez and his family were released on parole. Dkt. 18-6 at 2.

On June 17, 2024, an IJ dismissed the removal proceedings against De La Cruz Gonzalez without prejudice. Dkt. 3-5 at 5.

On August 22, 2025, De La Cruz Gonzalez was apprehended a second time and charged under § 1182(a)(6)(A)(i). *Id.* at 4–6; Dkt. 3-6 at 2; Dkt. 18-7 at 2. On September 30, De La Cruz Gonzalez filed an asylum claim, which is still pending. Dkt. 17 ¶¶ 19, 21. On October 6, an IJ determined that De La Cruz Gonzalez was subject to mandatory detention under § 1225(b)(2). Dkt. 3-7 at 2. The IJ set an alternative bond amount of $7,500. *Id.* at 2–3.

On October 24, DHS sought to amend the charge against De La Cruz Gonzalez so that he would be charged under § 1182(a)(7)(A)(i)(I). Dkt. 17 ¶ 22. An IJ rejected this amendment and sustained the charge under § 1182(a)(6). Dkt. 25 ¶ 5. On November 4, USCIS granted Special Immigrant Juvenile ("SIJ") status to De La Cruz Gonzalez. *Id.* ¶ 7; Dkt. 25-1 at 2.

    3.      *Marta Escalante Perez*

Petitioner Marta Escalante Perez entered the United States on October 24, 2015 at the age of 18 and was apprehended upon arrival. Dkt. 3-8 at 4–6. She was charged under § 1182(a)(6)(A)(i). *Id.* at 4–5. On October 26, she was released on an order of recognizance. Dkt. 17 ¶ 24.

On January 30, 2023, the immigration case against Escalante Perez was terminated without prejudice. Dkt. 3-9 at 7.

Escalante Perez was apprehended a second time on August 7, 2025, and once again charged under § 1182(a)(6)(A)(i). *Id.* at 4–7; Dkt. 3-10 at 2. On October 8, an IJ determined that Escalante Perez was subject to mandatory detention under § 1225(b)(2). Dkt. 3-11 at 2. The IJ did not set an alternative bond amount. *Id.* at 2–3.

On September 30, Escalante Perez filed an asylum application. Dkt. 17 ¶ 27. On October 24, an IJ denied Escalante Perez's asylum application and ordered her removal. *Id.* ¶ 29. That order is on appeal to the Board of Immigration Appeals ("BIA"). *Id.*

### 4.    *Rebeca Esther Morales Fuenmayor*

Petitioner Rebeca Esther Morales Fuenmayor entered the United States without inspection on May 30, 2024, and was apprehended on arrival. Dkt. 3-12 at 4, 6. She was charged under § 1182(a)(6)(A)(i) and released on recognizance the same day. *Id.* at 6; Dkt. 3-13 at 2; Dkt. 17 ¶ 30.

On July 18, 2025, Morales Fuenmayor was apprehended by immigration officials and charged under § 1182. Dkt. 3-12 at 4–6. On August 25, an IJ concluded that Morales Fuenmayor was subject to mandatory detention under § 1225(b)(2). Dkt. 3-14 at 2. The IJ set an alternative bond amount of $7,500. *Id.* at 2–3.

On September 30, 2025, an IJ denied Morales Fuenmayor's asylum application and ordered her removal. Dkt. 18-14; Dkt. 17 ¶ 36. Six days later, Morales Fuenmayor appealed this order to the BIA. Dkt. 17 ¶ 36.

### 5.    *Edvin Ramiro Matias Calmo*

On April 13, 2018, Petitioner Edvin Ramiro Matias Calmo entered the United States without inspection at the age of 16 and was apprehended upon arrival. Dkt. 3-15 at 4, 6; Dkt. 18-

15. He was processed as an unaccompanied juvenile, and DHS transferred custody to ORR. Dkt. 3-16 at 2; Dkt. 17 ¶ 37. On August 8, 2018, he was released to live with his sister in Shelton, Washington. Dkt. 3-16 at 2. On October 31, 2018, DHS charged Matias Calmo as inadmissible under § 1182(a)(6)(A)(i). Dkt. 17 ¶ 39.

Matias Calmo filed an asylum claim on January 3, 2023. Dkt. 3-15 at 6. On January 7, 2025, an IJ terminated his removal proceedings without prejudice so that his asylum claim could proceed. Dkt. 3-17 at 2; Dkt. 17 ¶ 43.

On October 4, Matias Calmo was apprehended a second time and charged under § 1182(a)(6)(A)(i). Dkt. 3-15 at 4–6; Dkt. 3-18 at 2. On October 17, an IJ found that he was subject to mandatory detention under § 1225(b)(2). Dkt. 3-19 at 2. The IJ did not set an alternative bond amount. *Id.* at 2–3.

### 6.    *Hector Ramirez Garcia*

On July 20, 2018, Petitioner Hector Ramirez Garcia entered the United States at the age of 16 and was apprehended upon arrival. Dkt. 18-20 at 2–4. He was charged under § 1182(a)(6)(A)(i), processed as an unaccompanied juvenile, and transferred to ORR custody. *Id.* at 3; Dkt. 17 ¶ 47. On October 16, DHS initiated removal proceedings and charged Ramirez Garcia as inadmissible under § 1182(a)(6)(A)(i). Dkt. 17 ¶ 48. On December 18, he was released to live with his uncle in Spokane, Washington. Dkt. 3-20 at 2.

On March 11, 2021, Ramirez Garcia applied for special immigrant juvenile status, which he received on June 15, 2021. Dkt. 17 ¶ 50. On December 8, 2021, he was granted deferred action, and an IJ dismissed the removal proceedings against him without prejudice. Dkt. 3-21 at 2; Dkt. 18-22 at 4.

On October 6, 2025, Ramirez Garcia was apprehended a second time and charged under both § 1182(a)(6)(A)(i) and § 1182(a)(7)(A)(i)(I). Dkt. 18-22; Dkt. 18-23. During these habeas proceedings, he was transferred from NWIPC to a facility in New Mexico. Dkt. 11 ¶¶ 4, 8.

### B.    Procedural history

On October 21, 2025, Petitioners filed a habeas petition. Dkt. 1. De La Cruz Gonzalez and Morales Fuenmayor seek release upon payment of their respective alternative bond amounts. *Id*. at 20. Del Valle Castillo, Escalante Perez, Matias Calmo, and Ramirez Garcia seek an order requiring Respondents to provide them with bond hearings under § 1226(a). *Id*.

Also on October 21, Petitioners moved for an order to show cause. Dkt. 2. On October 23, the Court ordered Respondents to file a return by November 3. Dkt. 8. Federal Respondents filed a return on November 3, and Petitioners filed a traverse four days later. Dkt. 16; Dkt. 20. On November 21, the Court held a hearing on the issues presented in the habeas petition. *See* Dkt. 26. Counsel for Petitioners and Counsel for Respondents participated in the hearing. *See id.*

On October 30, while the habeas proceedings were ongoing, Petitioners filed an *ex parte* motion for a temporary restraining order ("TRO") enjoining Respondents from transferring them out of the Western District of Washington during the habeas proceedings. Dkt. 10 at 1. At the same time, they sought an order requiring Respondents to return Ramirez Garcia back to this district. *Id.* On November 5, the Court issued an order granting the TRO motion in part. Dkt. 19. The Court prohibited Respondents from transferring any Petitioner from NWIPC to another facility during these habeas proceedings, but the Court declined to order that Respondents return Ramirez Garcia to NWIPC. *Id.* at 5–6. On November 14, the Court extended the TRO through November 21, 2025 and invited briefing regarding whether the Court should convert the TRO to a preliminary injunction. Dkt. 23. No party opposed converting the TRO (*see* Dkt. 24 at 1 & n.1), and on November 21, the Court did so. Dkt. 27.

1    The habeas petition is now ripe for the Court's review. The Court GRANTS the Petition

2  for writ of habeas corpus and ORDERS Respondents to return Ramirez Garcia to NWIPC within

3  7 days of this order.

### III.    LEGAL STANDARD

5    "Writs of habeas corpus may be granted by . . . the district courts . . . within their

6  respective jurisdictions." 28 U.S.C. § 2241(a). Habeas petitioners must prove by the

7  preponderance of the evidence that they are "in custody in violation of the Constitution or laws

8  or treaties of the United States." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004);

9  28 U.S.C. § 2241(c).

### IV.    DISCUSSION

11    This case primarily concerns two sections of the Immigration and Nationality Act

12  ("INA"): 8 U.S.C. §§ 1225(b)(2) and 1226(a). Section 1226(a), which is the "default rule" for

13  noncitizens present in the United States who are arrested and placed in immigration detention,

14  permits the government to release a detainee on bond during the pendency of the detainee's

15  removal proceedings. *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018). Section 1225(b)(2)

16  applies more narrowly, mandating detention of "applicant[s] for admission" who are "seeking

17  admission" to the United States and are not "clearly and beyond a doubt entitled to be admitted."

18  8 U.S.C. § 1225(b)(2)(A). The crux of this case is whether Petitioners are subject to mandatory

19  detention under § 1225(b)(2) or discretionary detention under § 1226(a). Petitioners argue that

20  they are members of a certified class entitled to consideration of release on bond under

21  § 1226(a). Dkt. 1 ¶¶ 7, 37; Dkt. 20 at 2–4. In the alternative, they argue that because they resided

22  in the United States before their most recent apprehensions, they are not "seeking admission"

23  under § 1225(b). Dkt. 1 ¶¶ 37–38, 54; Dkt. 20 at 4–8.

24

A.      **Petitioners are not members of the *Rodriguez Vazquez* Bond Denial Class.**

Petitioners seek habeas relief as members of the *Rodriguez Vazquez v. Bostock* Bond Denial Class. Dkt. 1 ¶¶ 97–100. In *Rodriguez Vazquez*, this Court granted summary judgment to members of a certified Bond Denial Class, holding that their detention under § 1225(b)(2) was unlawful under the INA. --- F.Supp.3d ----, No. 3:25-CV-05240-TMC, 2025 WL 2782499, at *27 (W.D. Wash. Sept. 30, 2025). The Court defined the Bond Denial Class to include the following individuals:

> All noncitizens without lawful status detained at [NWIPC] who (1) have entered or will enter the United States without inspection, (2) are not apprehended upon arrival, (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the noncitizen is scheduled for or requests a bond hearing.

*Id.* at *6.

The parties agree that De La Cruz Gonzalez cannot claim class membership because he entered the United States at a port of entry—in other words, not "without inspection." Dkt. 16 at 12; Dkt. 20 at 3. However, Federal Respondents argue that the plain language of the class definition also excludes the remaining Petitioners from class membership because they were "apprehended upon arrival." Dkt. 16 at 12–13.

Petitioners contend that Del Valle Castillo, Escalante Perez, Morales Fuenmayor, Matias Calmo, and Ramirez Garcia are members of the Bond Denial Class because they are not "seeking admission" as of their most recent apprehensions by immigration officers, even if they were subject to detention under § 1225(b) when they were first apprehended upon entry to the United States. Dkt. 1 ¶¶ 7, 37; Dkt. 20 at 2–4. Petitioners point to the present-tense construction of the class definition to argue that class membership is tied exclusively to a petitioner's current detention circumstances. *Id.* at 2.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Petitioners' proposed reading would expand the class definition beyond what the Court certified. A class consists of individuals who possess "a common core of factual or legal issues." *Evon v. L. Offs. of Sidney Mickell*, 688 F.3d 1015, 1029 (9th Cir. 2012) (quoting *Parra v. Bashas', Inc.*, 536 F.3d 975, 978–79 (9th Cir. 2008)). Class claims must be "limited . . . to those fairly encompassed by the named plaintiff's claims." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982)). In *Rodriguez Vazquez*, class membership was limited to those individuals who "are not apprehended on arrival." *Rodriguez Vazquez v. Bostock*, 349 F.R.D. 333, 365 (W.D. Wash. 2025). This requirement is clearly tied to a specific time period: arrival in the United States. In light of the first prong of the class definition, which includes individuals who "have entered or will enter the United States without inspection," the use of the present-tense "are" in the second prong merely serves to encompass both those who have already entered the United States and those who are entering or will enter the United States. The Court declines Petitioners' request to read this clear requirement out of the class definition.

However, the fact that Petitioners are not Bond Denial Class members does not prevent them from seeking habeas relief on similar legal grounds. As explained further below, even though Petitioners were apprehended on arrival, their individual factual circumstances demonstrate that they are currently subject to detention under § 1226(a).

**B.    Petitioners are not "seeking admission" to the United States under 8 U.S.C. § 1225(b).**

Petitioners argue that individuals who are apprehended upon arrival in the United States, released, and later apprehended again are subject to discretionary detention under § 1226(a). Dkt. 1 ¶¶ 37–38, 54; Dkt. 20 at 4–8. They point to cases in which courts have determined that

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 9

similarly situated petitioners are entitled to consideration for release on bond. Dkt. 1 ¶ 54; Dkt. 20 at 5–7.

Respondents maintain that all noncitizens present in the United States without admission are subject to mandatory detention under § 1225(b)(2). Dkt. 16 at 13–14. They note that the Court is not required to defer to prior agency practices when interpreting the relevant provisions of the INA. *Id.* at 14–15; *see Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412–13 (2024).

Although Petitioners are not Bond Denial Class members, the statutory analysis of *Rodriguez Vazquez* is relevant here. In *Rodriguez Vazquez*, the Court concluded that "the default discretionary bond procedures in section 1226(a) apply to noncitizens who, like Bond Denial Class members, are 'present in the United States without being admitted or paroled' under section 1182(a)(6)(A)" and are not subject to mandatory detention under another section of the statute. No. 3:25-CV-05240-TMC, 2025 WL 2782499, at *17. In other words, "noncitizens arrested while already present in the United States continue to be governed under the discretionary detention scheme in section 1226." *Id.* at *18 (internal quotation marks removed). To the extent Respondents rely on the contention that all noncitizens present in the United States without legal authorization are subject to mandatory detention under § 1225(b)(2), the Court incorporates the reasoning and conclusions from *Rodriguez Vazquez*. *See id.* at *16–26. The *Rodriguez Vazquez* statutory analysis supports the contention that Petitioners, each of whom resided in the United States for months or years prior to his or her most recent apprehension, are detained under § 1226(a). But the Court's inquiry does not end there.

Relying on both statutory analysis and assessment of factual circumstances, courts across the country have uniformly determined that detainees similarly situated to these Petitioners are detained under § 1226(a). *See, e.g.*, *Bethancourt Soto v. Soto*, No. 25-CV-16200, 2025 WL 2976572, at *7 (D.N.J. Oct. 22, 2025); *Ortiz Donis v. Chestnut*, No. 1:25-CV-01228 JLT SAB,

2025 WL 2879514, at *6–11 (E.D. Cal. Oct. 9, 2025); *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at *8–12 (N.D. Cal. Sept. 12, 2025); *Jimenez v. FCI Berlin, Warden*, No. 25-CV-326-LM-AJ, 2025 WL 2639390, at *5–10 (D.N.H. Sept. 8, 2025); *Romero v. Hyde*, No. CV 25-11631-BEM, 2025 WL 2403827, at *8 (D. Mass. Aug. 19, 2025); *Maldonado v. Olson*, No. 25-CV-3142 (SRN/SGE), 2025 WL 2374411, at *11 (D. Minn. Aug. 15, 2025); *Lopez Benitez v. Francis*, No. 25 CIV. 5937 (DEH), 2025 WL 2371588, at *3 (S.D.N.Y. Aug. 13, 2025); *Rosado v. Figueroa*, No. CV 25-02157 PHX DLR (CDB), 2025 WL 2337099, at *6–11 (D. Ariz. Aug. 11, 2025), *report and recommendation adopted sub nom. Rocha Rosado v. Figueroa*, No. CV-25-02157-PHX-DLR (CDB), 2025 WL 2349133 (D. Ariz. Aug. 13, 2025); *Rodriguez v. Perry*, 747 F. Supp. 3d 911, 915–16 (E.D. Va. 2024). Particularly relevant in each case is the government's treatment of the petitioner seeking habeas relief: where a petitioner has been "treated by Respondents as subject to discretionary detention under section 1226, rather than mandatory detention under section 1225," the former is more likely to apply. *Romero*, No. CV 25-11631-BEM, 2025 WL 2403827, at *8; *see also Jimenez*, No. 25-CV-326-LM-AJ, 2025 WL 2639390, at *5; *Lopez Benitez*, No. 25 CIV. 5937 (DEH), 2025 WL 2371588, at *3. Accordingly, the Court examines each Petitioner's factual circumstances and treatment by the government since his or her arrival in the United States. The Court concludes that each Petitioner is subject to discretionary detention under § 1226(a).

### 1.    *Del Valle Castillo*

Del Valle Castillo entered the United States as an unaccompanied juvenile, was transferred to ORR custody, and was ultimately released from federal custody to live with his father. Dkt. 3-1 at 7–9; Dkt. 3-2 at 2; Dkt. 17 ¶ 4. He then resided in the United States for over three years before his most recent apprehension. *See* Dkt. 3-1 at 4–6.

Del Valle Castillo's release from custody indicates that he was and is subject to detention under § 1226(a). "[I]ndividuals detained following examination under section 1225 can only be paroled into the United States 'for urgent humanitarian reasons or significant public benefit'" under 8 U.S.C. § 1182(d)(5)(A). *Martinez v. Hyde*, 792 F. Supp. 3d 211, 215 (D. Mass. 2025) (quoting *Jennings*, 583 U.S. at 300). When the government releases a § 1225 detainee under humanitarian parole, it reserves the right to "continue to treat the non-citizen 'as if stopped at the border.'" *Id.* (quoting *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020)). In other words, that parolee could be treated as "seeking admission" despite a long period of living in the United States while on humanitarian parole. But here, nothing in the record suggests that Del Valle Castillo was released on humanitarian parole under § 1182(d)(5)(A), meaning that he has not been "seeking admission" during the entirety of his time in the United States. *See Martinez v. Hyde*, No. CV 25-11909-BEM, 2025 WL 3152847, at *7 (D. Mass. Nov. 12, 2025) (concluding that petitioner who was transferred to ORR custody and released to live with his father was not "parole[d] . . . into the United States"); *see also Maldonado*, No. 25-CV-3142 (SRN/SGE), 2025 WL 2374411, at *13 (noting that "unaccompanied alien child" is a separate designation from "applicant for admission"). Instead, the circumstances of Del Valle Castillo's release demonstrate that his detention is governed by § 1226(a).

### 2.    *De La Cruz Gonzalez*

De La Cruz Gonzalez was placed into expedited removal proceedings when he arrived in the United States with his family in 2017. Dkt. 3-5 at 5; Dkt. 17 ¶ 12. In 2024, however, an IJ dismissed those proceedings. Dkt. 3-5 at 5. He lived in the United States for eight years between his initial release on parole and his most recent apprehension. *See id.* at 4–6. In the time since the parties filed their briefing in this matter, an IJ has determined that De La Cruz Gonzalez can be charged only under § 1182(a)(6), and he was granted SIJ status. Dkt. 25 ¶ 5; Dkt. 25-1 at 2.

Several factors lead to the conclusion that De La Cruz Gonzalez is subject to detention under § 1226(a). First, although he was initially placed into expedited removal proceedings, those proceedings have since been dismissed. *See* 8 C.F.R. § 1239.2(e) ("When a notice to appear is canceled or proceedings are terminated under this section any outstanding warrant of arrest is canceled."). Second, he is currently charged only under § 1182(a)(6) as "present in the United States without being admitted or paroled." *See Rodriguez Vazquez*, No. 3:25-CV-05240-TMC, 2025 WL 2782499, at *17. Third, he has been granted SIJ status, a designation that confers removal protections to certain young noncitizens. *See* 8 U.S.C. §§ 1101(a)(27)(J), 1227(c); *Murillo-Chavez v. Bondi*, 128 F.4th 1076, 1085 (9th Cir. 2025) ("SIJ status is a form of parole that confers eligibility for adjustment to [lawful permanent resident] status to noncitizen minors who have been abused, abandoned, or neglected."). A noncitizen with SIJ status is not "admitted" to the United States. *Murillo-Chavez*, 128 F.4th at 1085. However, the rights conferred by SIJ status distinguish designees "from arriving aliens who cannot lay claim to constitutional rights." *Rodriguez*, 747 F. Supp. 3d at 918; *Osorio-Martinez v. Att'y Gen. United States of Am.*, 893 F.3d 153, 174 (3d Cir. 2018) ("Because of the rights and benefits they have been accorded, SIJ designees stand much closer to lawful permanent residents than to aliens present in the United States for a few hours before their apprehension."); *Martinez*, No. CV 25-11909-BEM, 2025 WL 3152847, at *8 n.33 ("Petitioner's SIJ status appears to be incompatible, whether by direct operation of statute or simply as indicative of presence, with finding that he was an 'arriving alien,' as would be required to sustain mandatory detention under section 1225."). SIJ status therefore "weighs in favor" of a finding that a petitioner is not "seeking admission" under § 1225(b)(2). *Rodriguez*, 747 F. Supp. 3d at 916.

3.     *Escalante Perez*

Escalante Perez was apprehended upon arrival and released on an order of recognizance, and then the removal proceedings against her were terminated. Dkt. 3-8 at 4–6; Dkt. 17 ¶¶ 23–24; Dkt. 3-9 at 7. She lived in the United States for nearly a decade between her initial release and her most recent apprehension. *See* Dkt. 3-9 at 4–7.

Escalante Perez's release on an order of recognizance shows that she was initially detained under § 1226(a). *See Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115 (9th Cir. 2007) ("It is apparent that the [Immigration and Naturalization Service] used the phrase 'release on recognizance' as another name for 'conditional parole' under § 1226(a)."); *Martinez*, 792 F. Supp. 3d at 215 ("Release on recognizance is not 'humanitarian' or 'public benefit' 'parole into the United States' under section 1182(d)(5)(A) but rather a form of 'conditional parole' from detention upon a charge of removability, authorized under section 1226."); *Hasan v. Crawford*, No. 1:25-CV-1408 (LMB/IDD), 2025 WL 2682255, at *8 (E.D. Va. Sept. 19, 2025) ("Release on recognizance pursuant to § 1226(a)(2)(B) is 'legally distinct' from parole into the United States pursuant to § 1182(d)(5)(A)." (quoting *In re Cabrera-Fernandez*, 28 I. & N. Dec. 747, 749 (BIA 2023))); *Rosado*, No. CV 25-02157 PHX DLR (CDB), 2025 WL 2337099, at *7 (same). And regardless of the basis for her initial detention, when the government chose to dismiss her removal proceedings, it was aware of Escalante Perez's presence in the United States without any form of parole under the INA. The termination of her removal proceedings thus also demonstrates that she has not been "seeking admission" in the time since. *See* 8 C.F.R. § 1239.2(e).

4.     *Morales Fuenmayor*

Morales Fuenmayor was apprehended on arrival in the United States and released on recognizance the same day. Dkt. 3-12 at 4, 6; Dkt. 3-13 at 2; Dkt. 17 ¶ 30. She resided in the

United States for over a year between her initial release and her most recent apprehension. *See* Dkt. 3-12 at 4–6. As with Escalante Perez, the fact that Morales Fuenmayor was released on recognizance demonstrates that she was initially treated as and remains subject to detention under § 1226(a). *See Ortega-Cervantes*, 501 F.3d at 1115.

### 5.    *Matias Calmo*

Matias Calmo entered the United States in 2018 as an unaccompanied juvenile, was transferred to ORR custody, and was released to live with his sister. Dkt. 3-15 at 4, 6; Dkt. 18-15; Dkt. 3-16 at 2; Dkt. 17 ¶ 37. The removal proceedings against him were terminated in January 2025. Dkt. 3-17 at 2; Dkt. 17 ¶ 43. He lived in the United States for over seven years between his initial release and his most recent apprehension. *See* Dkt. 3-15 at 4–6. Both his initial release from custody and the termination of his initial removal proceedings demonstrate that he is subject to detention under § 1226(a). *See Martinez*, No. CV 25-11909-BEM, 2025 WL 3152847, at *7; 8 C.F.R. § 1239.2(e).

### 6.    *Ramirez Garcia*

Ramirez Garcia entered the United States in 2018 as an unaccompanied juvenile, was transferred to ORR custody, and was released to live with his uncle. Dkt. 18-20 at 3; Dkt. 17 ¶¶ 47–48; Dkt. 3-20 at 2. In 2021, he was granted SIJ status and deferred action, and the removal proceedings against him were terminated. Dkt. 17 ¶ 50; Dkt. 3-21 at 2; Dkt. 18-21 at 4. He resided in the United States for nearly seven years between his initial release and his most recent apprehension. *See* Dkt. 18-22 at 4. For the reasons explained above, his initial release from custody, his SIJ status, and the termination of his initial removal proceedings all show that he is subject to detention under § 1226(a). *See Martinez*, No. CV 25-11909-BEM, 2025 WL 3152847, at *7; 8 C.F.R. § 1239.2(e); *Rodriguez*, 747 F. Supp. 3d at 916.

1

2

**C.    Respondents must return Petitioner Hector Ramirez Garcia to the Western District of Washington.**

3

Petitioners request that the Court order Respondents to return Ramirez Garcia to NWIPC

4

as part of granting him habeas relief. Dkt. 20 at 8–9. They assert that his return will reinstate the

5

status quo in this case and effectuate meaningful relief by restoring his access to his immigration

6

counsel, who are currently located in Washington state. *Id*. They suggest that, at this point in the

7

proceedings, they have demonstrated "that the law and facts clearly favor [their] position,"

8

meeting the standard for mandatory injunctive relief. *Id*. at 8. At the hearing on November 21,

9

Respondents maintained that transferring Ramirez Garcia to New Mexico was lawful and did not

10

violate any court order.

11

In the order denying Ramirez Garcia's request for a TRO mandating his return to

12

NWIPC, the Court explained that he had not yet demonstrated "that the law and facts clearly

13

favor [his] position." Dkt. 19 at 6 (quoting *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir.

14

2015)). For the foregoing reasons, the Court concludes that Ramirez Garcia has now shown that

15

he is clearly entitled to habeas relief because he is unlawfully detained under § 1225(b)(2). To

16

effectuate the relief to which he is entitled, Respondents must return him to NWIPC.

17

A court hearing a federal habeas corpus case may "dispose of the matter as law and

18

justice require." 28 U.S.C. § 2243. "[H]abeas corpus is 'at its core, an equitable remedy,' that is

19

sensitive to the ends of justice." *Gage v. Chappell*, 793 F.3d 1159, 1167 (9th Cir. 2015) (quoting

20

*Schlup v. Delo*, 513 U.S. 298, 319 (1995)). Here, an attorney at the Northwest Immigrant Rights

21

Project, which is representing Ramirez Garcia in his SIJ and removal proceedings, has attested

22

that the organization will be unable to represent him in an immigration hearing outside of

23

Washington state. Dkt. 12 ¶¶ 2–11. As this Court has previously explained, limiting access to

24

counsel in immigration proceedings irreparably harms a detainee. *See* Dkt. 19 at 4–5. The Court

therefore finds that "justice require[s]" the return of Ramirez Garcia to NWIPC to grant him

meaningful relief from unlawful detention.

## V.    CONCLUSION

For the reasons explained above, the Court ORDERS as follows:

1.    The petition for writ of habeas corpus (Dkt. 1) is GRANTED.

2.    Within ONE day of this Order, Respondents must do the following:

    a.    Either release Petitioner Jose Antonio De La Cruz Gonzalez or allow his release upon payment of the alternative bond amount of $7,500 and any conditions set by Immigration and Customs Enforcement/the Department of Homeland Security.

    b.    Either release Petitioner Rebeca Esther Morales Fuenmayor or allow her release upon payment of the alternative bond amount of $7,500 and any conditions set by Immigration and Customs Enforcement/the Department of Homeland Security.

3.    Within 7 days of this order, Respondents must return Petitioner Hector Ramirez Garcia to the Northwest Immigration and Customs Enforcement Processing Center.

4.    Within 14 days of this order, Respondents must provide Petitioners Angel Romulo Del Valle Castillo, Marta Escalante Perez, Edvin Ramiro Matias Calmo, and Hector Ramirez Garcia new bond hearings under 8 U.S.C. §1226(a).

Any fee petition should be filed within the deadlines set by the Equal Access to Justice

Act, 28 U.S.C. § 2412.

Dated this 26th day of November, 2025.

Tiffany M. Cartwright
United States District Judge